1

2

3

4

5          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
6                  AT SEATTLE

7    JILLIAN HORMAN,

8                      Plaintiff,

9            v.                              C20-564 TSZ

10   SUNBELT RENTALS INC, et al.,            ORDER

11                     Defendants.

12
        THIS MATTER comes before the Court on Defendant Sunbelt Rentals, Inc.'s
13
("Sunbelt") Motion to Dismiss, docket no. 13.  Having reviewed all papers filed in
14
support of and in opposition to the motion, the Court enters the following order.
15
**Background**
16
        From June 21, 2018 to April 26, 2019, Plaintiff Jillian Horman ("Horman")
17
worked as a driver for Sunbelt in Redmond, Washington.  Complaint ("Compl."), docket
18
no. 1 at ¶¶ 8-9.  Horman was hired to work an eight-hour shift, five days per week.  *Id*. at
19
¶¶ 11-12.  The work included picking up and delivering construction equipment such as
20
skid steers, small excavators, and scissor lifts.  *Id.* at ¶ 10.
21
        Horman alleges that soon after she began working for Sunbelt, she began to
22
experience a variety of negative interactions with other Sunbelt employees.  Around
23

ORDER - 1

1  August 2018, in response to one negative incident with a dispatcher, Horman went to

2  Sunbelt's District Manager, Perry Cook ("Cook"), for help.  *Id*. at ¶¶ 14-15.  In response,

3  Cook told Horman that she was in the "wrong role" because she is "female."  *Id*. at ¶ 17.

4  Horman then reported these comments to Sunbelt's Human Resources department.  *Id.* at

5  ¶ 19.

6      Around March 2019, Horman also reported to Human Resources that she began to

7  feel that her direct manager, Brett Johnson ("Johnson"), treated her differently than her

8  male counterparts.  *Id*. at ¶ 56.  Horman alleges that Sunbelt's treatment of her got

9  increasingly worse.  *Id*. at ¶ 60.  For example, Horman, who is 5'1" tall, alleges that

10  Johnson did not "promptly" respond to Horman's request for women's sized work pants.

11  *Id*. at ¶¶ 22-23, 92.  Horman also alleges that Johnson publicly scolded Horman in front

12  of other employees.  *Id*. at ¶ 48.  Horman also suspected that Johnson was adjusting her

13  VDOS logs.  *Id*. at ¶¶ 58-59.  Sunbelt refused to supply Horman with tools and rain gear,

14  forcing her to equip herself.  *Id.* at ¶ 63.  Johnson later confronted Horman about her

15  Human Resources report.  *Id*. at ¶¶ 53-54.

16      On March 27, 2019, Horman's physician, Dr. Billett, recommended that she work

17  a maximum of eight hours per day due to her elevated blood pressure.  *Id*. at ¶¶ 67, 73-

18  74.  Horman submitted Dr. Billett's recommendation to Sunbelt, and he completed the

19  Sunbelt certification paperwork indicating that Horman had elevated blood pressure.  *Id*.

20  at ¶¶ 68, 73.

21      In response, Johnson told Horman that she would be terminated if she did not

22  work overtime.  *Id.* at ¶ 69.  Sunbelt also refused to allow Horman to attend medical

23

ORDER - 2

1    appointments occurring during work hours, and then placed her on a leave of absence on

2    April 11, 2019. *Id*. at ¶¶ 70, 75. After placing Horman on leave, Sunbelt's Human

3    Resources representative, Mariana Stout ("Stout"), attempted to contact Dr. Billett

4    without Horman's permission to seek her medical information. *Id.* at ¶¶ 76-77. Various

5    Sunbelt Human Resources personnel informed Horman that Sunbelt's business needs

6    required Horman to work overtime and that it would not accommodate her. *Id*. at ¶¶ 80,

7    82, 84.

8        On April 17, 2019, Stout told Horman her medical leave was denied and that

9    Sunbelt expected her to return to work the following day. *Id*. at ¶ 85. Horman was then

10   assigned work that she had not been regularly required to do. *Id.* at ¶¶ 89-91. Johnson

11   told Horman she was "not giving one hundred percent" and that she either needed to

12   work more than eight hours or resign from her position and sign a severance agreement.

13   *Id*. at ¶¶ 96, 98. Horman reiterated her request to be accommodated and refused to sign

14   the severance agreement. *Id*. at ¶¶ 99, 106. Horman then went to clean her work truck of

15   her personal belongings. *Id.* at ¶ 102. While Horman and Johnson were in the parking

16   lot, Johnson said, "Take your pants off." *Id*. at ¶ 111. When Horman hesitated, Johnson

17   yelled, "I need your uniform now!" *Id*. at ¶ 115. Horman clarified whether Johnson

18   wanted her to take her pants off in the parking lot, to which Johnson reiterated, "I want

19   the uniforms back, now." *Id*. at ¶¶ 116-17. Johnson began to follow Horman around the

20   parking lot. [1]  *Id*. at ¶ 119. Sunbelt sent her a letter soon after that incident informing her

21

22   --------

23   [1] Plaintiff does not allege that she in fact took off her pants in response to the request.

ORDER - 3

1   that she had violated company policy and voluntarily abandoned her job.  *Id*. at ¶¶ 120-

2   21.

3        Horman asserts causes of action for (1) Washington Law Against Discrimination

4   ("WLAD") disability discrimination; (2) Retaliation under the WLAD; (3) Failure to

5   accommodate under the WLAD; (4) Hostile work environment based on disability under

6   the WLAD; (5) Sex discrimination under the WLAD; (6) Hostile work environment

7   based on sex under the WLAD; (7) Negligent supervision and training and failure to

8   Train; (8) *Respondeat superior*; (9) Intentional infliction of emotional distress; and (10)

9   Negligent infliction of emotional distress.

10       Sunbelt now moves to dismiss all counts except retaliation under the WLAD and

11  *respondeat superior*.  Docket no. 13.

12  **Discussion**

13  **a.  Standard for Motion to Dismiss**

14       Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

15  provide detailed factual allegations, it must offer "more than labels and conclusions" and

16  contain more than a "formulaic recitation of the elements of a cause of action."  *Bell Atl.*

17  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

18  mere speculation of a right to relief.  *Id*.  When a complaint fails to adequately state a

19  claim, such deficiency should be "exposed at the point of minimum expenditure of time

20  and money by the parties and the court."  *Id*. at 558.  A complaint may be lacking for one

21  of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

22  cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

23  Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

ORDER - 4

1 | plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *Usher v.*

2 | *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is

3 | whether the facts in the complaint sufficiently state a "plausible" ground for relief.

4 | *Twombly*, 550 U.S. at 570.

5 | **b.  Whether elevated blood pressure can be a disability under the WLAD**

6 |       Sunbelt moves to dismiss Horman's disability-related claims (Compl., docket no.

7 | 1-1 at ¶¶ 122-25; 131-41) on the basis that elevated blood pressure is not a disability

8 | under the WLAD.   Sunbelt contends that elevated blood pressure is not an impairment, a

9 | medically diagnosable disorder, or a medically recognized disease.[2]  Motion to Dismiss,

10 | docket no. 13 at 5.  Sunbelt also contends that it did not "perceive" Horman's elevated

11 | blood pressure as a disability.[3]  *Id.*

12 |       The WLAD defines "disability" as "a sensory, mental, or physical impairment

13 | that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii)

---

[2] Sunbelt relies heavily on *Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611 (2019), in support of its position.  Whether a claimed disability is a medically recognized disease was not a necessary part of the analysis in either the *Taylor* opinion or any statute or interpretive regulation.  The *Taylor* court merely held that the medical recognition of obesity as a disease "further supports" the finding that obesity is a physiological disorder.  *Id.* at 626.  In Reply, Sunbelt contends that "[w]hile *hypertension* may be medically considered to be a disease, the Complaint alleges no facts that *elevated blood pressure* is similarly a medically recognized disorder."  Reply, docket no. 15 at 4 (emphasis added).  Hypertension, high blood pressure, and elevated blood pressure refer to different stages of the same condition.  The Merck Manual of Diagnosis and Therapy, which the *Taylor* court relied on in its analysis as a "reliable and trusted source for medical information," *Taylor*, 193 Wn.2d at 623 n.6, states that "[b]lood pressure in adults is classified as normal, elevated blood pressure, stage 1 (mild) hypertension, or stage 2 hypertension.  However, the higher the blood pressure, the greater the risk of complications—even within the normal blood pressure range—so these limits are somewhat arbitrary."  George L. Bakris, *High Blood Pressure (Hypertension)*, MERCK MANUAL OF DIAGNOSIS AND THERAPY (Oct. 2019), https://www.merckmanuals.com/home/heart-and-blood-vessel-disorders/high-blood-pressure/high-blood-pressure.

[3] Horman alleges in the Complaint that Sunbelt "treated Plaintiff differently . . . because of Plaintiff's actual or perceived disability."  Compl., docket no. 1-1 at ¶ 123.  Horman also alleges that Sunbelt placed her on leave on the basis that it could not accommodate her perceived disability.  *Id.* at ¶ 75.

ORDER - 5

1    is perceived to exist whether or not it exists in fact."  RCW 49.60.040(7)(a).  An

2    "impairment" includes, in pertinent part, "[a]ny physiological disorder or condition . . .

3    affecting one or more of the following body systems: . . . cardiovascular."  RCW

4    49.60.040(7)(c)(i).  A disorder is further defined as "a derangement of function" and "an

5    abnormal physical or mental condition."  *Taylor v. Burlington N. R.R. Holdings, Inc*., 193

6    Wn.2d 611, 626 (2019) (citing Webster's dictionary).

7           Both parties cite to *Taylor v. Burlington N. R.R. Holdings, Inc*., 193 Wn.2d 611

8    (2019), in support of their arguments regarding whether elevated blood pressure can be

9    an impairment under the WLAD.  In *Taylor*, the Washington Supreme Court held that

10   "obesity always qualifies as an impairment under the plain language of [the WLAD]

11   because it is recognized by the medical community as a 'physiological disorder, or

12   condition' that affects multiple body systems listed in the statute."  *Id.* at 615.  In so

13   holding, the *Taylor* court first noted that the Washington legislature "intended to adopt a

14   broad and expansive definition of 'disability' in order to protect against discrimination."

15   *Id*. at 621.  Then, relying on sources such as the American Medical Association, the

16   Merck Manual of Diagnosis and Therapy, and Webster's dictionary, the *Taylor* court

17   found that obesity qualifies as a physiological disorder.  *Id*. at 622-28.  The *Taylor* court

18   also found that obesity "inherently affects" body systems including the cardiovascular

19   system, musculoskeletal system, lymphatic system, and the endocrine system.  *Id.* at 629.

20          Here, Horman contends that her elevated blood pressure is a disability under the

21   WLAD because it is a physiological disorder that affects the cardiovascular system.

22   Sufficiently severe high blood pressure may constitute a disability under WLAD.

23

ORDER - 6

1   Whether Horman's elevated blood pressure is a disability under the WLAD, however,

2   involves a question of fact.  *See, e.g.*, *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369,

3   1378-79 (W.D. Wash. 2019) (question of fact regarding whether migraine condition was

4   a disability under WLAD where it was unclear whether plaintiff's migraines

5   "substantially limit[e]d at least one life activity" or condition was merely "transitory and

6   minor").

7   **c.  Disability Discrimination Under the WLAD (First Cause of Action)**

8          An employee alleging disparate treatment must establish that "(1) he belongs to a

9   protected class, (2) he was treated less favorably in the terms or conditions of his

10  employment, (3) than a similarly situated, nonprotected employee, and (4) he and the

11  nonprotected employee were doing substantially the same work; if the employer then

12  proffers a legitimate, nondiscriminatory reason for its action, then (5) the plaintiff must

13  produce evidence indicating that the employer's reason is pretextual." *Billings v. Town of*

14  *Steilacoom*, 2 Wn. App. 2d 1, 24 (2017).  At the motion to dismiss stage, Federal Rule of

15  Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing

16  the pleader is entitled to relief" in the employment discrimination context.  *Swierkiewicz*

17  *v. Sorema N. A.*, 534 U.S. 506, 508 (2002); *Schmitt v. Kaiser Found. Health Plan of*

18  *Washington*, 2020 WL 3969281, at *10 n.8 (9th Cir. July 14, 2020) ("At the pleadings

19  stage, we do not require a plaintiff to allege enough detail to state a prima facie case of

20  discrimination.").[4]

21

22  [4] Sunbelt repeatedly cites to Horman's burden to establish the elements of a prima facie employment
    discrimination case for her various claims.  *See* Motion to Dismiss, docket no. 13 at 6, 10, 11, 12 & 16;

23

ORDER - 7

1        Sunbelt contends that the Complaint contains no allegations that Horman was

2   treated less favorably as compared to any similarly situated employee who was not

3   disabled.   This comparative element is not necessary, however, to establish a prima facie

4   case under *McDonnell Douglas*.  *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189

5   Wn.2d 516, 531-32 (2017).[5]  Horman alleges that, in response to her accommodation

6   request, Sunbelt refused to accommodate her and gave her the choice to work without her

7   requested accommodation or, essentially, to quit.[6]  *See* Compl., docket no. 1-1 at ¶¶ 69,

8   80.  Horman alleges facts in the Complaint that, taken as true, state a plausible claim that

9   Sunbelt would have allowed a similarly situated but *non*-disabled person (i.e. one who

10

11

12   _____

13   Reply in Support of Motion to Dismiss, docket no. 15 at 5, 7-9.  While Horman will bear the burden of
establishing a prima facie case at summary judgment, she bears no such burden at the motion to dismiss
14   stage.  *Compare Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under
*McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.") *with Mikkelsen v.
Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wn.2d 516, 526-27 (2017) (requirement that at summary
15   judgment, the plaintiff must establish a *prima facie* case of discrimination either by offering direct
evidence of an employer's discriminatory intent, or by satisfying the three-part burden-shifting standard
16   first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

17   [5] Every case Sunbelt cites for the proposition that Horman must establish a prima facie case of disparate
treatment on the basis of disability was decided on a motion for summary judgment.  *See, e.g., Billings v.
18   Town of Steilacoom,* 2 Wn. App. 2d 1, 24 (2017); *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App.
212 (1996); *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217 (9th Cir. 1998); *Coghlan v. Am. Seafoods Co.
LLC,* 413 F.3d 1090 (9th Cir. 2005); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810 (9th Cir. 2002); *Moran v.
19   Selig*, 447 F.3d 748 (9th Cir. 2006); *McDaniels v. Grp. Health Co-op,* 57 F. Supp. 3d 1300 (W.D. Wash.
2014).

20   [6] Sunbelt characterizes Horman's recitation of the ultimatum that she either "work overtime up to twelve
hours per day or that Sunbelt would not accommodate her" (Compl., docket no. 1-1 at ¶ 80) as
21   "completely nonsensical."  Accepting the allegation as true and construing it in the light most favorable to
Horman, Sunbelt offered Horman no real choice.  Particularly considered in conjunction with Sunbelt's
22   other statements and actions (*see, e.g.*, *id.* at ¶¶ 69, 75, 82, 99), this statement unequivocally alleges
Sunbelt's refusal to accommodate Horman.

23

1  was able to work overtime) to continue working.  Sunbelt's Motion is DENIED as to

2  Plaintiff's first cause of action for disability discrimination under the WLAD.[7]

3  **d.  Retaliation Under the WLAD (Second Cause of Action)**

4  Defendant's Motion to Dismiss does not seek to address or dismiss Horman's

5  retaliation claim.  Horman's second cause of action for retaliation remains in the case.

6  **e.  Failure to Accommodate Disability Under the WLAD (Third Cause of Action)**

7  Under the WLAD, an accommodation claim involves two inquiries: (i) whether

8  the employee was disabled within the meaning of the WLAD; and (ii) whether the

9  employer met its affirmative obligation to reasonably accommodate the disability.  *See*

10  *Delaplaine v. United Airlines*, *Inc*., 518 F. Supp. 2d 1275, 1277 (W.D. Wash. 2007)

11  (citing *Pulcino v. Fed. Express Corp*., 141 Wn.2d 629, 640 (2000)).

12  Sunbelt contends that Horman's elevated blood pressure did not "substantially

13  limit" her ability to perform her job as a driver for Sunbelt as is required under the

14  WLAD before a right to accommodation arises.  *Delaplaine*, 518 F. Supp. 2d at 1277-78;

15  *Townsend v. Walla Walla Sch. Dist*., 147 Wn. App. 620, 626-27 (2008).

16  Horman's physician diagnosed her with elevated blood pressure and directed her

17  not to work more than eight hours per day.[8]  Compl., docket no. 1-1 at ¶¶ 67, 73.

18

19  [7] Although the Court denies the Motion with respect to this claim, given the paucity of facts alleged in support, this claim as currently alleged is not likely to survive a summary judgment challenge.

20  [8] In support of the contention that Horman has not sufficiently alleged a claim, Sunbelt cites only to cases decided at the summary judgment stage or after trial.  *See Delaplaine v. United Airlines, Inc.*, 518 F.

21  Supp. 2d 1275 (W.D. Wash. 2007); *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18 (2010); *Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620 (2008); and *Stallworth v. Seattle Sch. Dist. No. 1*, 2013 WL

22  822400 (W.D. Wash. Mar. 6, 2013).  *Davis v. Microsoft Corp.*, 149 Wn.2d 521 (2003) was decided after trial.

23

ORDER - 9

1    Because Sunbelt required her to work more than eight hours a day, Horman has alleged

2    that her elevated blood pressure had a substantially limiting effect on her job.[9]  Sunbelt's

3    Motion is DENIED as to Horman's third cause of action for failure to accommodate

4    disability under the WLAD.

5    **f.   Hostile Work Environment Based on Disability Under the WLAD (Fourth Cause of Action)**

6          A plaintiff must prove that (1) he or she was disabled within the meaning of the

7    antidiscrimination statute, (2) the harassment was unwelcome, (3) it was because of

8    disability, (4) it affected the terms and conditions of employment, and (5) it was

9    imputable to the employer.  *Robel v. Roundup Corp.*, 148 Wn.2d 35, 45 (2002).  At this

10   stage, Horman need not support her allegations with evidence, but her Complaint must

11   allege sufficient facts to state the elements of a hostile work environment claim—"a

12   formulaic recitation of a cause of action's elements will not do."  *See Twombly*, 550 U.S.

13   at 555.

14         Here, Plaintiff does not allege unwelcome harassment that occurred because of her

15   disability.  The portions of the Complaint that Horman asserts in Opposition to the

16   motion (*see* Plaintiff's Opposition, docket no. 14 at 11-12) relate merely to Sunbelt's

17   denial of Horman's accommodation request and not to any unwelcome harassment in

18   connection with that denial.  *Cf. Floyd v. Lee*, 968 F. Supp. 2d 308, 328-29 (D.D.C. 2013)

19   (while "somewhat thin," allegations that defendant made "humiliating" and "derogatory"

20   comments in connection with refusing to accommodate plaintiff's disability, such as "I

21

22   [9] Whether Horman's elevated blood pressure actually had a substantially limiting effect on her job
     involves a disputed issue of material fact.  *See Erickson*, 417 F. Supp. 3d at 1378-79.

23

ORDER - 10

1  don't give a damn about her disability," were sufficient to survive motion to dismiss

2  hostile work environment disability claim).  Horman asks the Court to recognize a cause

3  of action for hostile work environment based solely on Sunbelt's failure to accommodate

4  her.  Even accepting the allegations of the Complaint as true for purposes of this motion,

5  Horman does not allege any facts showing that, as a result of her disability, her

6  workplace became so "permeated with discriminatory intimidation, ridicule, and insult"

7  that was "sufficiently severe or pervasive to alter the conditions of [her] employment and

8  create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

9  (1993) (citation omitted).  Horman's fourth cause of action for hostile work environment

10 based on disability under the WLAD is DISMISSED without prejudice.

11 **g.  Sex Discrimination Under the WLAD (Fifth Cause of Action)**

12      Under the WLAD, it is unlawful for an employer "[t]o discriminate against any

13 person in compensation or in other terms or conditions of employment because of . . .

14 sex."  RCW 49.60.180(3).  A plaintiff must show "(1) membership in a protected class;

15 (2) the plaintiff was similarly situated to members of the opposite sex, i.e., that he or she

16 was qualified for the position applied for or was performing substantially equal work;

17 [and] (3) because of plaintiff's sex he or she was treated differently than members of the

18 opposite sex."  *Marquis v. City of Spokane*, 130 Wn.2d 97, 113-14 (1996).  "When such a

19 claim is brought by a woman against her employer, she must show, in essence, that the

20 employer treated her differently from similarly situated men."  *Schonauer v. DCR Entm't,*

21 *Inc.*, 79 Wn. App. 808, 825-26 (1995).

22      In support of this claim, Horman relies on alleged repeated statements by Mr.

23 Cook, Sunbelt's district manager that she was "in the wrong role" because she is

ORDER - 11

"female."  Compl., docket no. 1-1 at ¶ 17.[10]   It is unclear how these facts show that

Sunbelt treated Horman differently than similarly situated men.  Indeed, the Complaint

itself suggests that Sunbelt's treatment of Horman was due to her disability and not

because of her sex.  *See, e.g.*, *id* at ¶¶ 69, 80, 82, 84, 98-99.  Horman's fifth cause of

action for sex discrimination under the WLAD is DISMISSED without prejudice.

**h.  Hostile Work Environment Based on Sex Under the WLAD (Sixth Cause of Action)**

Horman also brings a hostile work environment claim on the basis of sex.  To

establish a prima facie hostile work environment claim, a plaintiff must show the

following four elements: "(1) the harassment was unwelcome, (2) the harassment was

because plaintiff was a member of a protected class, (3) the harassment affected the terms

and conditions of employment, and (4) the harassment is imputable to the employer."

*Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 275 (2012) (citation omitted).

Horman's Complaint fails to allege conduct by Sunbelt that was due to her sex.

Horman cites the same conversation with the Sunbelt's district manager (Compl., docket

no. 1-1 at ¶ 17) as well as an instance in which Johnson did not "promptly" provide her

with the correct size of work pants (*id.* at ¶¶ 22-23).  She cites no other instances that are

---

[10] Other allegations Horman alleges in her complaint include conclusory assertions that Johnson treated her differently than her male counterparts.  Compl., docket no. 1-1 at ¶¶ 56, 60.  Horman cites, for example, an instance in which she told Johnson, "You are being a bully and discriminating against me because I'm a woman."  *Id*. at ¶ 118.  Horman's conclusory accusation of sex discrimination in an otherwise gender-neutral conversation does not make it so.  *See, e.g.*, *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) ("Just saying so is not enough.  A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination.").

1  attributable to her sex.[11]  Taken in the light most favorable to Horman, these isolated

2  incidents are neither sufficiently pervasive or severe such that they altered the conditions

3  of her employment.  *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003),

4  *as amended* (Jan. 2, 2004).  Horman's sixth cause of action for hostile work environment

5  based on sex under the WLAD is DISMISSED without prejudice.

6  **i.   Negligent Supervision and Training and Failure to Train (Seventh Cause of Action)**

7         The theory of negligent hiring and supervision "creates a limited duty to control an

8  employee for the protection of third parties, even where the employee is acting outside

9  the scope of employment."  *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51 (1997). To

10  establish a claim for negligent hiring and supervision, a plaintiff must show: (1) another

11  employee acted outside the scope of his employment with defendant; (2) he presented a

12  risk of harm; (3) defendant knew, or should have known in the exercise of reasonable

13  care, that the employee posed a risk to others, and (4) defendant's failure to supervise

14  was a proximate cause of the loss.  *Garrison v. Sagepoint Fin., Inc*., 185 Wn. App. 461,

15  484 (2015).

16         Horman does not allege that any Sunbelt employee acted outside the scope of their

17  employment.  In fact, Horman alleges the opposite.  *See* Compl., docket no. 1-1 at ¶ 4

18  (alleging that each defendant was "acting within the course and scope of Sunbelt Rentals,

19

20

21  _____

22  [11] Plaintiff cites a number of other instances of alleged harassment completely unconnected to sex which provide no basis for this claim.  *See, e.g.*, Plaintiff's Opposition, docket no. 14 at 15.

23

1 | Inc. in causing the harm as alleged herein").[12]  Horman's seventh cause of action for

2 | negligent supervision and training and failure to train is DISMISSED without prejudice.

3 | **j.  *Respondeat Superior* (Eighth Cause of Action)**

4 | Sunbelt's Motion to Dismiss does not address or seek to dismiss Horman's eighth

5 | cause of action, *respondeat superior*.  Horman's eighth cause of action for *respondeat*

6 | *superior* therefore remains in the case.

7 | **k.  Intentional Infliction of Emotional Distress ("IIED") (Ninth Cause of Action) &
Negligent Infliction of Emotional Distress ("NIED") (Tenth Cause of Action)**

8 | To prevail on a claim for IIED, a plaintiff must prove three elements: "(1) extreme

9 | and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and

10 | (3) severe emotional distress on the part of the plaintiff."  *Robel v. Roundup Corp.*, 148

11 | Wn.2d 35, 51 (2002) (citation omitted).

12 | Horman fails to plead facts that constitute an IIED claim.  Although troubling, the

13 | only instance Horman cites to support her outrage claim is when Johnson told Horman to

14 | take her pants off.  Compl., docket no. 1-1 at ¶ 111.  On its own, this isolated instance

15 | does not provide sufficient grounds for an IIED claim.

16 | At the pleading stage, bare and conclusory allegations of emotional distress

17 | unsupported by factual detail are merely a "formulaic recitation of the elements of a

18 | cause of action" and are "wholly insufficient to state a claim."  *Phillips v. KIRO-TV, Inc.*,

19 |

20 |

21 | [12] Horman fails to plead even a "formulaic recitation of the elements" of a negligent supervision claim, let
alone any facts that support those elements.  *Twombly*, 550 U.S. at 555.  The Court also notes that a claim

22 | for negligent supervision that is duplicative of a discrimination claim must be dismissed.  *See, e.g.*,
*Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 866 (2000); *Golden v. W. Corp.,* 2012 WL

23 | 405457, at *3 (E.D. Wash. Feb. 8, 2012).

ORDER - 14

1 817 F. Supp. 2d 1317, 1325 (W.D. Wash. 2011) (citing *Twombly*, 550 U.S. at 555).

2 Horman has also made only conclusory allegations that she suffered "mental distress" in

3 "an amount to be proven at trial."  Compl., docket no. 1-1 at ¶¶ 66, 160, 165.  These

4 conclusory allegations of emotional distress are insufficient, particularly considering that

5 Horman does not need discovery to determine the extent of her own emotional distress.

6 Horman's ninth cause of action for IIED is DISMISSED without prejudice.[13]

7      For her NIED claim, Horman also fails to allege objective symptoms of emotional

8 distress.[14]  *See Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 962 (1978)

9 (citation omitted).  Horman's tenth cause of action for NIED is DISMISSED without

10 prejudice.

11 **l.      Dismissal Without Prejudice**

12      If the Court dismisses the complaint or portions thereof, it must consider whether

13 to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Federal

14 Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint "shall be

15 freely given when justice so requires."  Here, Sunbelt would not be prejudiced by any

16 amendment to cure the foregoing defects in the Complaint.  The Court therefore

17 ───────────────────

18 [13] The Court also notes that if Horman amends her complaint to replead the dismissed causes of action,
she may only recover damages for NIED and IIED if the factual basis for those claims is distinct from the

19 facts supporting her other existing claims under the WLAD.  *Northrop v. Safeway, Inc.*, 2017 WL
1543331, at *4 (W.D. Wash. Apr. 28, 2017); *Caldwell v. Boeing Co.*, 2018 WL 2113980, at *10 (W.D.

20 Wash. May 8, 2018).

[14] In her Opposition, Horman misstates the elements required to plead an NIED claim against an employer

21 in the workplace.  *See* Opposition, docket no. 14 at 19.  Horman's stated NIED elements come from the
<u>*dissent*</u> in *Snyder v. Med. Serv. Corp. of E. Washington*, 145 Wn.2d 233 (2001).  Sunbelt correctly
contends that Horman has not pled the requisite elements of an NIED claim of duty, breach, proximate

22 cause, and injury.  In particular, Horman "fails to clearly articulate what duty she would have us impose
on her employer" given the fact that "[t]here is no duty for an employer to provide employees with a

23 stress free workplace."  *Id.* at 243.  Horman's NIED claims also fails for this independent reason.

1  dismisses Horman's fourth, fifth, sixth, seventh, ninth, and tenth causes of action without

2  prejudice and with leave to amend.

3  **<u>Conclusion</u>**

4      For the foregoing reasons, the Court ORDERS:

5      (1)   Defendant Sunbelt's Motion to Dismiss, docket no. 13, is GRANTED in

6  part and DENIED in part as follows:

7          (a)   The Motion is DENIED as to the following causes of action: the first

8      cause of action for disability discrimination under the WLAD and the third cause

9      of action for failure to accommodate disability under the WLAD; and

10          (b)   The Motion is GRANTED as to the following causes of action,

11      which are DISMISSED without prejudice and with leave to amend: the fourth

12      cause of action for hostile work environment based on disability under the WLAD,

13      the fifth cause of action for sex discrimination under the WLAD, the sixth cause of

14      action for hostile work environment based on sex under the WLAD, the seventh

15      cause of action for negligent supervision and training and failure to train, the ninth

16      cause of action for IIED, and the tenth cause of action for NIED.

17      (2)   Plaintiff shall file any amended complaint within sixty (60) days from the

18  date of this Order.

19      (3)   As a result of the Court's rulings, the following causes of action remain:

20          (a)   The first cause of action for disability discrimination under the

21      WLAD;

22          (b)   The second cause of action for retaliation under the WLAD;

23

ORDER - 16

1          (c)      The third cause of action for failure to accommodate disability under

2     the WLAD; and

3          (d)      The eighth cause of action for *respondeat superior*.

4     (4)      The Clerk is directed to send a copy of this Order to all counsel of record.

5     IT IS SO ORDERED.

6     Dated this 30th day of July, 2020.

7

8     _____

9     Thomas S. Zilly
      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 17